**STATE OF RHODE ISLAND**                    **SUPERIOR COURT**
**PROVIDENCE, SC**

**CLAUDE EMILE**

    **VS**                                            **C.A. NO.:**

**JP MORGAN CHASE BANK, N.A., ALIAS**
**AND JOHN DOE, ALIAS**

<u>**COMPLAINT**</u>

Plaintiff, by her Attorney, complains of Defendants as follows:

1.     Plaintiff is a resident of State of Rhode Island with an address of 21 Dodge Street, North Providence, Rhode Island.  She resides in and owns said real estate located at 21 Dodge Street, North Providence, Rhode Island.

2.     Mortgage Electronic Registration Systems, Inc., ("MERS"), is a Delaware Corporation.

2.      Plaintiff executed a mortgage to MERS as nominee for CCO Mortgage Corp., on June 30, 2006.  A copy is attached as Exhibit A.

3.     Plaintiff executed a note to MERS as nominee for CCO Mortgage Corp., on or about June 30, 2006.

4.     Wells Fargo Bank, N.A., ("Wells Fargo") is a national bank.  It is a loan servicer for the owner of the Plaintiff's mortgage and note.

5.     Harmon Law Offices, P.C., ("Harmon") on January 8, 2015 on behalf of Wells Fargo has scheduled a foreclosure sale for Plaintiff's home on March 3, 2015, purportedly on behalf of Wells Fargo as indicated by Exhibits B and C.  Copies of these notices are the only documents, which Plaintiff has received, which indicate that a foreclosure is scheduled for that date.

6.     Neither Wells Fargo nor any entity acting on its behalf has sent Plaintiff a notice advising her that she is entitled to a face to face meeting,

prior to exercise of default and acceleration as required by the terms of her mortgage.

7.     The mortgage, contains conditions for the exercise of default and statutory power of sale. Specifically the provisions in paragraph of the mortgage were a condition precedent to the exercise of the acceleration of the mortgage.  Plaintiff has not received such a notice.

8.     Pursuant to RIGL 34-27-3.2, any foreclosure notice, commenced by a notice pursuant to RIGL 34-27-4(d), after October 6, 2014, which does not contain a Notice of Mediation, will be void.

9.     Plaintiff has never received a notice of mediation pursuant to the provisions of RIGL 34-27-3.2 from Wells Fargo or its attorney in conjunction with this foreclosure.

10.     Plaintiff will be irreparably harmed if the foreclosure sale that is scheduled for March 3, 2015 at 10:00 AM by Wells Fargo and Harmon occurs and causes the sale of her home.

11.     Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

12.     The failure of the Defendant to comply with paragraph 9 of the mortgage and RIGL 34-27-3.2 renders any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability.

13.     These facts demonstrate that Plaintiff has a substantial likelihood of success.  Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause the Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by Defendant.

14.     Such relief sought by Plaintiff will not disserve the public interest if imposed.

15.     Since there has been no compliance with RIGL 34-27-3.2 any foreclosure will be void as the Plaintiff received no notice of mediation.

16.     Harmon has already published two advertisements of a foreclosure sale of Plaintiff's home in the Providence Journal for this foreclosure and for a prior foreclosure scheduled in December, contrary to the provisions of RIGL 34-27-3.2.

17.     Plaintiff has incurred actual damages as the result of the conduct of the Defendant in not complying with the provisions of RIGL 34-27-3.2. Her mortgage loan account has been charged legal fees and expenses for postage and advertising for a foreclosure sale without providing for mediation as required.

18.     Plaintiff has incurred legal fees and expenses due to the conduct of the Defendant in not complying with the provisions of RIGL 34-27-3.2.

Wherefore Plaintiff demands that this Court:

a.     Declare that all actions of the Defendant, Wells Fargo Bank, N.A. in attempting to foreclose on the Plaintiff's property, without complying with the provisions of R.I.G.L. § 34-27-3.2 are void.

b.     Declare that the Plaintiff is entitled to mandatory mediation pursuant to R.I.G.L. § 34-27-3.2.

c.     Grant a Preliminary Injunction Restraining and Enjoining Wells Fargo Bank, N.A. and any other entity acting on its behalf from conducting a foreclosure at 21 Dodge Street, North Providence, Rhode Island pending a hearing on a Permanent Injunction

d.     Grant a Permanent and Mandatory Injunction directing LSF 9 and any other entity to comply with R.I.G.L. § 34-27-3.2 and to schedule and conduct mediation as mandated by R.I.G.L. § 34-27-3.2 before attempting to foreclose on Plaintiff's property.

e.     Award the Plaintiff actual damages and compensatory damages and legal fees and costs against the Defendant for the violation of R.I.G.L. § 34-27-3.2

f.      Grant all other just and proper relief.


                                        CLAUDE EMILE

February 23, 2015
                                        By her Attorney

                                        /s/ John B. Ennis
                                        JOHN B. ENNIS, ESQ. #2135
                                        1200 Reservoir Avenue
                                        Cranston, Rhode Island 02920
                                        (401) 943-9230


Plaintiff demands a Trial by Jury




                                        CLAUDE EMILE
                                        By her Attorney


February 23, 2015                       /s/ John B. Ennis
                                        JOHN B. ENNIS, ESQ. #2135
                                        1200 Reservoir Avenue
                                        Cranston, Rhode Island 02920
                                        (401) 943-9230

# EXHIBIT A

# REDACTED

# REDACTED



DOC. NO: 00005351
BOOK 2287 PAGE 305

COPY

Return To:

CCO Mortgage Corp.
P.O. Box 4060, Glen Allen, VA
23058

Prepared By:

———————— [Space Above This Line For Recording Data] ————————

State of Rhode Island               MORTGAGE

FHA Case No.
451-0891153

MIN 100010300198724981

THIS MORTGAGE ("Security Instrument") is given on June 30, 2006.
The Mortgagor is Randol Emile and Claude Emile

whose address is 741 RIVER ST, Providence, RI  82908-

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS. CCO Mortgage Corp.

("Lender") is organized and existing under the laws of State of New York                      , and
has an address of 10561 Telegraph Road, Glen Allen, VA  23059
. Borrower owes Lender the principal sum of
two hundred thirteen thousand two hundred ninety and 00/100
Dollars (U.S. $213,290.00                 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on July 1, 2036
. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance
of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower
does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and

FHA Rhode Island Mortgage with MERS - 4/96
VMP4N(RI) (0509)                Amended 2/01
Page 1 of 8                                        Initials: LE RE

V-P Mortgage Solutions, Inc

0004616501 (2/01)                                                           0318672406

DOC NO: 06005351
BOOK  2237 PAGE   306

assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in Providence

County, Rhode Island:

Parcel ID Number: Plat 2 Lot 394                                          [Street]
which has the address of 21 Dodge Street
North Providence                        [City], Rhode Island 02904      [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

4N(RI) (9608)                                Page 2 of 8

006ARKRuff (2003)                                                          521C8T24E8

SEP-22-2007  17:17    FROM-RESIDENTIAL TITLE SERVICES        401-541-7920        T-322   P 004/011   F-652

DOC NO: 000005351
BOOK 2287 PAGE 307

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

4N(R) (9301)                                    Page 3 of 8                                          0010372404
DOC NO 0000 0000 (2/03)

BOOK NO. 2287 PAGE 308  00205251

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

4(RI)(9504)                                        Page 4 of 8

DOC NO:   00005351
BOOK   2227 PAGE    509

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

DOC NO:    000053S1
BOOK   2287 PAGE     310

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials CE  RÉ

DOC NO: 00005351
BOOK 2227 PAGE 311

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of notice of sale to Borrower as provided in paragraph 13. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Waiver of Homestead. If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

21. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Other (specify)
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

SEP-28-2007  17:19      FROM-RESIDENTIAL TITLE SERVICES              401-941-7900        T-522  P.006/011  F-655

DOC NO:   000D5351
BOOK   2287 PAGE    312

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in
any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _Claude Emile_____ (Seal)
                                                   Claude Emile                        -Borrower

                                           _Rendel Emile_____ (Seal)
                                                   Rendel Emile                        -Borrower

_____ (Seal)                   _____ (Seal)
              -Borrower                                          -Borrower

_____ (Seal)                   _____ (Seal)
              -Borrower                                          -Borrower

_____ (Seal)                   _____ (Seal)
              -Borrower                                          -Borrower

STATE OF RHODE ISLAND, KENT                                          County ss:
     On this   30th   day of    June, 2006,        , in   Warwick, Rhode Island
in said County, before me personally appeared

     CLAUDE EMILE AND RENDEL EMILE

                                                         each and all to me known and known
to me to be the person(s) executing the foregoing instrument and acknowledged said execution to be his/her/their free
act and deed.

                                           _____
                                                      Notary Public

                                           Thomas E. McDermott
                                           Notary Public
                                           My Commission Expires: _____

DOC NO:   00005351
BOOK   2287 PAGE   313

Exhibit "A"

That certain tract or parcel of land, with all the buildings and other improvements thereon, situated on the westerly side of Dodge Street and the easterly side of Mineola Avenue, in said Town of North Providence, comprising the whole of lots numbered sixty-six (66) and one hundred one (101) and the northerly fifteen (15) feet in width by the entire depth of lots numbered sixty-five (65) and one hundred two (102) on that plat of land entitled "Mineral Spring Park North Providence R I Owned by J.W. Wilbur A.... Ellot Eng'r. Boston, Mass. Sept. 16, 1903", which said plat is on file in the office of the Records of Deeds in said Town of North Providence on Plat Card No. 13.

Said parcel faces easterly on the westerly line of Dodge Street on which it measures forty-five (45) and holding that width extends back westerly to the easterly line of Mineola a distance of one hundred forty (140) feet

Being the same premises conveyed to this grantor by Warranty Deed of Frank Romano et ux dated September 26, 1958 and recorded in Land Evidence Records of the Town of North Providence in Deed Book 54 at page 92.

PROPERTY ADDRESS:

21 DODGE STREET,
NORTH PROVIDENCE RI.

AP 2 LOT 394

RECEIVED FOR RECORD
NORTH PROVIDENCE· RI
Jul 03 2006 01:56:47P
MarsAnn DeAngelus
TBK-2527-GRAND PEG(06-0573-04N024)

SEP-25-2007 17:19   FROM-RESIDENTIAL TITLE SERVICES          401-941-7900          T-322  P.311/311  F-658

DOC NO: 00005350
BOOK 2287 PAGE 303

Exhibit "A"

That certain tract or parcel of land, with all the buildings and other improvements thereon, situated on the westerly side of Dodge Street and the easterly side of Mainella Avenue, in said Town of North Providence, comprising the whole of lots numbered sixty-six (66) and one hundred one (101) and the northerly fifteen (15) feet in width by the entire depth of lots numbered sixty-five (65) and one hundred two (102) on that plat of land entitled "Mineral Spring Park North Providence R.I. Owned by J. W. Wilbur A. L. Eliot Eng'r. Boston, Mass. Sept. 16, 1903", which said plat is on file in the office of the Recorder of Deeds in said Town of North Providence on Plat Card No. 13.

Said parcel faces easterly on the westerly line of Dodge Street on which it measures forty-five (45) feet and holding that width extends back westerly to the easterly line of Mainella Avenue a distance of one hundred forty (140) feet.

Being the same premises conveyed to Alfred L. Proteno by Warranty deed of Frank Romano et ux dated September 25, 1958 and recorded in Land Evidence Records of the Town of North Providence in Deed Book 54 at page 92.

PROPERTY ADDRESS:

21 Dodge Street
North Providence, RI 02904
Assessor's Plat -2 Lot-394

SEP 25 2007 17:20                              401 941 7900        PAGE.11

# EXHIBIT B

# HARMON LAW OFFICES, P.C.

150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL (617) 558-0500
FAX (617) 244-7304
Business Hours: Monday-Friday 8:00 AM-to 5:30 PM
*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

January 8, 2015

To:   Mr. Claude Emile
      21 Dodge St
      North Providence, RI 02904

## NOTICE OF MORTGAGE FORECLOSURE SALE

Re:   21 Dodge Street, North Providence, Rhode Island

Please be advised that this office has scheduled a foreclosure sale to take place at 10:00 a.m. on March 3, 2015 at the above-referenced premises. We are enclosing a copy of the foreclosure advertisement for your records. You will not receive any further notice of the sale.

Our experience has shown us that you are likely to benefit if you allow qualified bidders at the foreclosure sale to enter and inspect the premises. This may result in a higher purchase price. If you are willing to allow qualified bidders to enter and inspect the premises, please be present at the time of the foreclosure sale.

You may order a reinstatement or payoff 24 hours a day on-line by going to www.hloreinstatement.com or to www.hlopayoff.com. Please follow the instructions contained on the web page. Please note that only requests made by owners, borrowers, mortgagors and authorized parties will be processed. You may also contact us during business hours to request a reinstatement or payoff by calling (617) 558-0598. When completing the on-line form or when calling our office, please reference your Case Number 201106-1068so that we may process your request more quickly.

## IMPORTANT NOTICE

A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney.

### Rhode Island General Laws Section 34-27-4(d)

(d)      Foreclosure sales affecting servicemembers. –

(1)      The following definitions shall apply to this subsection and to subsection (c):

(i)      ''Servicemember'' means a member of the army, navy, air force, marine corps, or coast guard and members of the national guard or reserves called to active duty.

(ii)      ''Active duty'' has the same meaning as the term is defined in 10 U.S.C. sections 12301 through 12304.  In the case of a member of the national guard, or reserves ''Active duty'' means and includes service under a call to active service authorized by the president or the secretary of defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a national emergency declared by the president and supported by federal funds.

(2)      This subsection applies only to an obligation on real and related personal property owned by a servicemember that:

(i)      Originated before the period of the servicemember's military service or in the case of a member of the national guard or reserves originated before being called into active duty and for which the servicemember is still obligated; and

(ii)      Is secured by a mortgage or other security in the nature of a mortgage.

(3)      Stay of right to foreclose by mortgagee.  -  Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (c) was received within nine (9) months of completion of active duty or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such nine (9) month period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

(4)      Stay of proceedings and adjustment of obligation.  -  In the event a mortgagee proceeds with foreclosure of the property during, or within nine (9) months after a servicemember's period of active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

(i)      Stay the proceedings for a period of time as justice and equity require; or

(ii)      Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5)      Sale or foreclosure.  -  A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

(i)      Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or

(ii)     If made pursuant to an agreement of all parties.

(6)      Penalties. - A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year ,or both.  The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7)      Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearing on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.

*Harmon Law Offices, P.C.*
Attorney for Present holder of mortgage


ELC/CGS/201106-1068/Enclosure


**PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

## MORTGAGEE'S SALE

### 21 Dodge Street North Providence, RI

The premises described in the mortgage will be sold subject to all encumbrances and prior liens on March 3, 2015 at 10:00 a.m. on the premises, by virtue of the power of sale contained in a mortgage by Rendel Emile and Claude Emile dated June 30, 2006 and recorded in the North Providence Land Evidence Records in Book 2287, Page 305, the conditions of said mortgage having been broken.

$5,000.00 in cash, certified or bank check is required to bid.  Other terms will be announced at the sale.

HARMON LAW OFFICES, P.C.
Attorney for the Holder of the Mortgage
150 California Street
Newton, MA 02458
(617) 558-0500
201106-1068 - YEL

/Notice of Sale - RI/Emile, Rendel / Emile,
Claude

# HARMON LAW OFFICES, P.C.
150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL (617) 558-0500
FAX (617) 244-7304
Business Hours: Monday-Friday 8:00 AM-to 5:30 PM
*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

FORM 34-27-7

January 8, 2015

**Occupant**
**21 Dodge Street**
**North Providence, RI 02904**

## NOTICE OF PENDING FORECLOSURE

Re:  21 Dodge Street, North Providence RI 02904

This Notice is provided to you to inform you of the intent to foreclose on property address listed above. The holder of the mortgage on the property address listed above hereby notifies you that the above referenced property is currently scheduled to be sold at foreclosure.

### TENANTS ARE HEREBY NOTIFIED OF THE FOLLOWING

1.  The property listed above is scheduled to be sold at foreclosure;

2.  The foreclosure sale is scheduled for March 3, 2015 at 10:00 a.m. at the property;

3.  **Housing counseling services are available to you at no cost.**  Counseling services that can help you understand your options and provide resources and referrals are available from counseling agencies approved by the United States Department of Housing and Urban Development (HUD). You can locate a HUD-approved counseling agency by calling HUD's toll-free telephone number, 1-800-569-4287, or by accessing HUD's Internet homepage at www.hud.gov.  The TDD number is 1-800-877-8339.  Counseling services are available free of charge through HUD's Housing Counseling Program.

4.  Rhode Island Legal services (RILS) may be able to provide assistance.RILS may be reached at (401) 274-2652 or rils.org and is located at 56 Pine Street, 4th Floor, Providence, RI 02903.

5.  United Way 2-1-1 is an information and referral line available 24 hours a day, 7 days a week in 175 languages and dialects.  This free and confidential service connects people to resources offered by health and human service providers, government agencies and community-based organizations. Dial 211 on your telephone or visit www.211RI.org.  United Way of Rhode Island is located at 50 Valley Street, Providence, RI 02909.

6.  This notice does not eliminate your obligation to pay rent. **You must continue to pay rent to the landlord until the foreclosure sale occurs.**

### THIS IS NOT AN EVICTION NOTICE.

# HARMON LAW OFFICES, P.C.

150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL (617) 558-0500
FAX (617) 244-7304
Business Hours: Monday-Friday 8:00 AM-to 5:30 PM
*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

January 8, 2015

To:   Sir/Madam Rendel Emile
      21 Dodge St
      North Providence, RI 02904

## NOTICE OF MORTGAGE FORECLOSURE SALE

Re:   21 Dodge Street, North Providence, Rhode Island

Please be advised that this office has scheduled a foreclosure sale to take place at 10:00 a.m. on March 3, 2015 at the above-referenced premises. We are enclosing a copy of the foreclosure advertisement for your records. You will not receive any further notice of the sale.

Our experience has shown us that you are likely to benefit if you allow qualified bidders at the foreclosure sale to enter and inspect the premises. This may result in a higher purchase price. If you are willing to allow qualified bidders to enter and inspect the premises, please be present at the time of the foreclosure sale.

You may order a reinstatement or payoff 24 hours a day on-line by going to www.hloreinstatement.com or to www.hlopayoff.com. Please follow the instructions contained on the web page. Please note that only requests made by owners, borrowers, mortgagors and authorized parties will be processed. You may also contact us during business hours to request a reinstatement or payoff by calling (617) 558-0598. When completing the on-line form or when calling our office, please reference your Case Number 201106-1068so that we may process your request more quickly.

## IMPORTANT NOTICE

A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney.

## Rhode Island General Laws Section 34-27-4(d)

(d)     Foreclosure sales affecting servicemembers. –

(1)     The following definitions shall apply to this subsection and to subsection (c):

(i)     ''Servicemember'' means a member of the army, navy, air force, marine corps, or coast guard and members of the national guard or reserves called to active duty.

(ii)     ''Active duty'' has the same meaning as the term is defined in 10 U.S.C. sections 12301 through 12304. In the case of a member of the national guard, or reserves ''Active duty'' means and includes service under a call to active service authorized by the president or the secretary of defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a national emergency declared by the president and supported by federal funds.

(2)     This subsection applies only to an obligation on real and related personal property owned by a servicemember that:

(i)     Originated before the period of the servicemember's military service or in the case of a member of the national guard or reserves originated before being called into active duty and for which the servicemember is still obligated; and

(ii)     Is secured by a mortgage or other security in the nature of a mortgage.

(3)     Stay of right to foreclose by mortgagee. - Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (c) was received within nine (9) months of completion of active duty or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such nine (9) month period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

(4)     Stay of proceedings and adjustment of obligation. - In the event a mortgagee proceeds with foreclosure of the property during, or within nine (9) months after a servicemember's period of active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

(i)     Stay the proceedings for a period of time as justice and equity require; or

(ii)     Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5)     Sale or foreclosure. - A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

(i)      Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or

(ii)      If made pursuant to an agreement of all parties.

(6)      Penalties. - A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year ,or both.  The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7)      Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearing on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.

*Harmon Law Offices, P.C.*
Attorney for Present holder of mortgage

ELC/CGS/201106-1068/Enclosure

**PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

## MORTGAGEE'S SALE

### 21 Dodge Street North Providence, RI

The premises described in the mortgage will be sold subject to all encumbrances and prior liens on March 3, 2015 at 10:00 a.m. on the premises, by virtue of the power of sale contained in a mortgage by Rendel Emile and Claude Emile dated June 30, 2006 and recorded in the North Providence Land Evidence Records in Book 2287, Page 305, the conditions of said mortgage having been broken.

$5,000.00 in cash, certified or bank check is required to bid.  Other terms will be announced at the sale.


HARMON LAW OFFICES, P.C.
Attorney for the Holder of the Mortgage
150 California Street
Newton, MA 02458
(617) 558-0500
201106-1068 - YEL

# EXHIBIT C

# HARMON LAW OFFICES, P.C.

150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL (617) 558-0500
FAX (617) 244-7304
Business Hours: Monday-Friday 8:00 AM-to 5:30 PM
*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

February 3, 2015

To:   Sir/Madam Spouse of Rendel Emile
21 Dodge St
North Providence, RI 02904

## NOTICE OF MORTGAGE FORECLOSURE SALE

Re:   21 Dodge Street, North Providence, Rhode Island

Please be advised that this office has scheduled a foreclosure sale to take place at 10:00 a.m. on March 3, 2015 at the above-referenced premises. We are enclosing a copy of the foreclosure advertisement for your records.

This notice is provided to you because an examination of the record title shows that you held an interest of record in the property thirty (30) days prior to the sale.

*Harmon Law Offices, P.C.*
Attorney for Present holder of mortgage

EKS/CGS/201106-1068/Enclosure
CERTIFIED MAIL NO.
RETURN RECEIPT REQUESTED

Certified Article Number

9414 7266 9904 2030 5759 42

SENDERS RECORD

<u>MORTGAGEE'S SALE</u>

21 Dodge Street North Providence, RI

The premises described in the mortgage will be sold subject to all encumbrances and prior liens on March 3, 2015 at 10:00 a.m. on the premises, by virtue of the power of sale contained in a mortgage by Rendel Emile and Claude Emile dated June 30, 2006 and recorded in the North Providence Land Evidence Records in Book 2287, Page 305, the conditions of said mortgage having been broken.

$5,000.00 in cash, certified or bank check is required to bid.  Other terms will be announced at the sale.

HARMON LAW OFFICES, P.C.
Attorney for the Holder of the Mortgage
150 California Street
Newton, MA 02458
(617) 558-0500
201106-1068 - YEL

201106-1068                         FCL

/Notice of Sale - RI/Emile, Rendel / Emile,
Claude

# HARMON LAW OFFICES, P.C.

150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL (617) 558-0500
FAX (617) 244-7304
Business Hours: Monday-Friday 8:00 AM-to 5:30 PM
*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

February 3, 2015

To:   Attorney John B. Ennis
      Law Office of John B. Ennis
      1200 Reservoir Avenue
      Cranston, RI 02199

## NOTICE OF MORTGAGE FORECLOSURE SALE

Re:   21 Dodge Street, North Providence, Rhode Island

Please be advised that this office has scheduled a foreclosure sale to take place at 10:00 a.m. on March 3, 2015 at the above-referenced premises.  We are enclosing a copy of the foreclosure advertisement for your records.

This notice is provided to you because an examination of the record title shows that your client, Mr. Claude Emile, held an interest of record in the property thirty (30) days prior to the sale.

*Harmon Law Offices, P.C.*
Attorney for Present holder of mortgage

EKS/CGS/201106-1068/Enclosure
CERTIFIED MAIL NO.
RETURN RECEIPT REQUESTED

**Certified Article Number**

9414 7266 9904 2030 5759 28

**SENDERS RECORD**

<u>MORTGAGEE'S SALE</u>

21 Dodge Street North Providence, RI

The premises described in the mortgage will be sold subject to all encumbrances and prior liens on March 3, 2015 at 10:00 a.m. on the premises, by virtue of the power of sale contained in a mortgage by Rendel Emile and Claude Emile dated June 30, 2006 and recorded in the North Providence Land Evidence Records in Book 2287, Page 305, the conditions of said mortgage having been broken.

$5,000.00 in cash, certified or bank check is required to bid.  Other terms will be announced at the sale.

HARMON LAW OFFICES, P.C.
Attorney for the Holder of the Mortgage
150 California Street
Newton, MA 02458
(617) 558-0500
201106-1068 – YEL

201106-1068                          FCL

/Notice of Sale - RI/Emile, Rendel / Emile, Claude