# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

**FILED**

MAY 15 2012

U.S. DISTRICT COURT
DISTRICT OF R.I.

CLAUDE EMILE

VS.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC,
ALIAS, WELLS FARGO BANK, N.A.,
ALIAS AND JOHN DOE, ALIAS

C.A. NO.:

**CA12- 366**

## COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THEPROVISIONS OF §9-30-1, et. seq. of THE GENERAL LAWS OF THE STATE OF RHODE ISLAND

Plaintiff, Claude Emile, by her Attorney, complains of Defendants as follows:

## COUNT I
## DECLARATORY JUDGMENT

1.     Plaintiff, Claude Emile is a resident of the State of Rhode Island with an address of 21 Dodge Street, North Providence, Rhode Island.  Plaintiff owns said real estate located at 21 Dodge Street, North Providence, Rhode Island with her brother, Rendell Emile.

2.     Defendant, John Doe is any entity, which has an interest in the Plaintiff's mortgage and/ or promissory note.

3.     Defendant, Wells Fargo Bank, N.A. ("Wells Fargo") claims to be the owner of Plaintiff's Mortgage and Note.  Defendant, Wells Fargo claims to be a loan servicer for Plaintiff's loan. It is a Federal Bank.

4.     Mortgage Electronic Registration Systems, Inc., ("MERS"), is a Delaware Corporation.  It is not licensed to do business in the State of Rhode Island.

4.    CCO Mortgage Corporation ("CCO") is a Corporation which was the nominal originator of Plaintiff's loan.

5.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1332 (diversity jurisdiction) as the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and because the Defendants are foreign entities with a principal residence outside of the State of Rhode Island.

6.    The subject matter of this complaint is proper to invoke the Equitable Jurisdiction of this Court.

7.    All of the parties named herein have sufficient minimum contacts with the State of Rhode Island to render them subject to its jurisdiction.

8.    This Court has subject matter jurisdiction over the matters in this complaint pursuant to the following statutes:

   a.    The provisions of R.I.G.L. §8-2-14 and R.I.G.L. §8-2-13, grant this Court jurisdiction over questions of law and equity. The Plaintiffs are asking this Court, inter alia, to restrain the certain defendants from taking adverse action on the subject property owned by the Plaintiff at 21 Dodge Street, North Providence, Rhode Island.

   b.    The provisions of the Declaratory Judgment Act, R.I.G.L. 9-30-1 et seq., grant the Court jurisdiction to determine certain legal questions relating to the property rights of the Plaintiff and the Defendants under certain contracts, assignments, powers of attorneys, and deed. Plaintiff asks that the alleged assignment of mortgage be declared void and invalid and that the Court decide that the mortgage and note are not held by any of the Defendants and that said Defendants lack standing to enforce the note or to foreclose on the mortgage.

9.    Exhibit A is a copy of the mortgage executed by Plaintiff to CCO.

10.    On about July 13, 2011, Defendants Wells Fargo and MERS as nominee for CCO prepared a fraudulent document referenced as an assignment of mortgage and note from MERS to Wells Fargo (See attached Exhibit B). This fraudulent document was prepared and executed in order to

create the false illusion that Wells Fargo owned the mortgage and note. The basis for this allegation of the creation of a fraudulent assignment are the following facts:

    a.     MERS never held the note, which remains payable to CCO. This assignment purports to convey the note, which is impossibility. By the terms of the attached mortgage, MERS was merely the nominee, and agent for CCO. MERS cannot by the terms of the mortgage and by its own rules, regulations and by-laws act on its own behalf. Thus the assignment by MERS itself was not only a fraudulently created document, but was also a nullity and is void.

    b.     Keegan Brown is not and has never been an employee or validly authorized Assistant Secretary of MERS. She is and has been an employee of Wells Fargo. She has never been legally authorized to sign any document on behalf of MERS. Her purported signature appears regularly in the land evidence records of various cities and towns in Rhode Island and in the land evidence records of Massachusetts counties and nationwide on behalf of Wells Fargo.

c.     There has never been any corporate resolution, which has named Keegan Brown as Assistant Secretary of Mortgage Electronic Registration Systems, Inc., which was voted and approved by the MERS Board of Directors.

d.     The By-Laws of the Corporation Mortgage Electronic Registration Systems, Inc. have never authorized the secretary of MERS to appoint any certifying authorizing officer. Pursuant to its By-Laws, only the Board of Directors of MERS can appoint officers of MERS. Copies of the bylaws are attached as Exhibit C.

e.     The document allegedly signed by Keegan Brown was designed to create the illusion of standing to allow Wells Fargo claim nominal ownership of the loan even though the Note and Mortgage were not owned by Wells Fargo. Defendants fraudulently designated an unauthorized person, whose name would be affixed to the alleged assignment. Any alleged

resolution, which purportedly appointed Keegan Brown as a MERS officer was prepared by Wells Fargo, using the MERS database and its code to access the database and create document, which it referenced as a MERS resolution, with no input from any MERS officers or the MERS Board of Directors. This action allowed Wells Fargo to claim ownership of the mortgage in order to seek to foreclose on the mortgage and note, which it did not own. Thus this fraudulent assignment, without basis or authorization, was created by Wells Fargo, using the MERS database.

11.     Exhibit D is a response to a Fair Debt Collection Practices Act letter sent to Plaintiff's attorney by Harmon Law Offices. This letter clearly indicates that the HUD is the investor for the loan, which has been securitized with the Federal Government insuring the loan. Thus the loan is not owned by Wells Fargo which is seeking to foreclose on its own behalf, despite not having ownership of the note or the mortgage. The attached copy of the note (Exhibit E) provided to plaintiff by Wells Fargo with an alleged endorsement by Wells Fargo, indicates that Wells Fargo does not own the note.

12.     Plaintiff never received any default letter from the holder of the note and the mortgage and any alleged foreclosure proceedings were invalid because no notice was sent to the Plaintiff pursuant to law and to the terms of the mortgage. Rhode Island law and the terms of the mortgage mandate that prior to commencing a foreclosure by a default letter and power of sale, a party actually holds the note and the mortgage by way of transfer and/or assignment.

13.     The Defendants lack standing to foreclose, to assign the mortgage, to transfer the note or otherwise enforce the note or the mortgage.

14.     The Defendants cannot establish possession and ownership of the note and the mortgage and cannot prove that the mortgage and note were transferred pursuant to law.

15.     The Defendants never acquired ownership the note or the mortgage, nor have valid transfers and assignments of each occurred. The note is payable to an entity other than Wells Fargo. There has not been a valid

transfer of the mortgage to Wells Fargo, which does not own the note and cannot enforce the note by way of foreclosure.

16. As a result, the Defendants lacked standing to enforce the note or the mortgage.

17. The Defendants have scheduled an illegal foreclosure for May 16, 2012.

## COUNT II

## INJUNCTIVE RELIEF

18. Paragraphs 1-17 are incorporated by reference.

19. The Plaintiff requires a Mandatory Injunction and Preliminary Injunction against all defendants to cease any attempts to commence or continue an illegal foreclosure action of Wells Fargo.

20. Wells Fargo has no interest in the property, the mortgage or note and, thus have no standing to foreclose upon the mortgage of the Plaintiff or to enforce the note or to assign the mortgage or transfer the note.

21. Plaintiff is being irreparably harmed by the illegal collection actions of all the Defendants.

22. The Plaintiff has no other remedy at law but to seek the relief requested herein. Equity favors the Plaintiff as she has no adequate remedy at law.

## COUNT III

## FACTS AND COMPLAINT TO QUIET TITLE AND FOR DAMAGES

23. Paragraphs 1-22 are incorporated by reference.

24. On June 30, 2006, the Plaintiff executed a promissory note in favor of CCO.

25. On even date, Plaintiffs executed a defective mortgage naming CCO as the Lender and ERS as the Mortgagee, which also contained language relative to the statutory sale. A copy is attached as Exhibit A.

26. On the face of the Note, CCO is clearly designated as the Lender.

27. The Mortgage defines the Lender as CCO.

28. On July 13, 2011, an alleged assignment, which was legally ineffective and void, was allegedly made from a person known as Keegan Brown, purportedly on behalf of MERS. On information and belief, Keegan Brown is not and has never been an employee or officer of MERS. This purported assignment does not indicate whether the signer is signing under corporate resolution and has authority to execute said assignment of mortgage nor does it affix a corporate seal. The purported assignment of mortgage was signed by a person without any authority to sign on behalf of MERS or the CCO and thus was not duly executed pursuant to the provisions of RIGL 34-11-24.

29. The Mortgage contains language that provides for the Statutory Power of Sale only in the event of a default on the note by Claude Emile

30. The mortgage does not state anywhere that the mortgagee or its assigns may invoke the Statutory Power of Sale.

32. RIGL 34-11-21 identifies the Mortgagee and the Lender as the same party.

33. The Lender never mailed a notice of sale to the Borrower.

34. The Lender never published the notice of sale.

35. The Foreclosure Sale is scheduled for May 16, 2012, allegedly noticed by the holder of the mortgage.

36. The Notice of sale was defective, and any alleged sale is defective.

37. Neither Wells Fargo nor MERS are the lender in regard to this matter and pursuant to RIGL 34-11-22 have no statutory authority to foreclose.

38.     Wells Fargo, which is not the Lender, wrongly published the notice of sale without contractual or statutory authority.

39.     The actions taken by Wells Fargo are without any force or effect relative to the invocation of the statutory power of sale or the actual sale of the property because it is not now, nor has it ever been, the Lender as defined by both the note and the mortgage.

40.     The foreclosure was not noticed or scheduled or advertised as required by the Note and Mortgage and Statute.

41.     To foreclose pursuant to §34-11-22, the language of the Statute and the Note and Mortgage must be followed to the letter of the law.

42.     The alleged foreclosure proceeding is not in compliance with statutory mandates and is not in compliance with the plain language in the Note and Mortgage.

43.     MERS had no authority to assign the mortgage to Wells Fargo.

44.     Wells Fargo lacks standing to foreclose. It does not own the note and does not own the mortgage.

45.     The Lender in this case was the only party, pursuant to the plain language of the mortgage, which was prepared by and used by the Defendant or Defendants, and in the event of any inconsistencies in said document, said inconsistencies and the results thereof are the fault of the Defendant or Defendants and the negative results thereof shall be construed against the Defendant or Defendants.

46.     The facts and documents relative to this matter establish that any foreclosure relative to this property must be done judicially and not by way of advertisement and auction due to failure to exactly follow the letter of the law.

47.     This claim is brought pursuant to the provisions of the Declaratory Judgment Act and as such fall within the jurisdiction of this Court.

48.     This is a justiciable controversy and is appropriate for Declaratory Judgment pursuant to the act.

**WHEREFORE**, Plaintiff prays that this Court:

      A.     Issue a Declaratory Judgment determining that the note and mortgage is not vested in Wells Fargo or MERS.

      B.     Issue a Declaratory Judgment that any assignment from MERS to Wells Fargo was invalid and void as a matter of law.

      C.     Issue a Declaratory Judgment that Wells Fargo does not own or hold the promissory note executed by Plaintiff.

      D.     Issue a Declaratory Judgment that any foreclosure proceedings previously conducted against the Plaintiff have been invalid and that any costs and legal fees allegedly incurred by Defendants shall not be charged against the Plaintiff.

      E.     Preliminarily and permanently restrain and enjoin all of the Defendants from commencing any further foreclosure actions or collection action against the Plaintiff.

      F.     Issue a Preliminary and Permanent Injunction against all of the Defendants from commencing any further or collection action against the Plaintiffs.

      G.     Issue an Order to Quiet the Title of the Plaintiff and order that the assignment  executed by MERS  is void and order same discharged.

      H.     Preliminarily and Permanently Restrain and  Enjoin Wells Fargo and MERS from executing any further assignments of the original mortgage.

      I.     Issue a Declaratory Judgment that the alleged assignment of  the mortgage referenced in this Complaint was not made by a corporate officer with requisite corporate authority pursuant to law.

      J.     Issue a Declaratory Judgment that Wells Fargo, as a party without ownership of the note or mortgage,  cannot seek

to foreclose on the Plaintiff, on its own behalf or on behalf of the owner of the note due to the bifurcation of the note and the mortgage.

K.     That Plaintiff be awarded Compensatory and punitive damages, attorney fees and costs against all defendants jointly and severally for wrongful foreclosure and for creating fraudulent documents.

L.     Award such other relief as this Court deems just and proper.

                          CLAUDE EMILE
                          By her Attorney

May 15, 2012

                          _John B Ennis_____
                          JOHN B. ENNIS, ESQ. #2135
                          1200 Reservoir Avenue
                          Cranston, Rhode Island 02920
                          (401) 943-9230

# EXHIBIT A

19872498
95
2021752261

DOC NO: 00005351
BOOK 2287 PAGE 305

COPY

Return To:

CCO Mortgage Corp.
P.O. Box 4060, Glen Allen, VA
23058

Prepared By:

[Space Above This Line For Recording Data]

State of Rhode Island

# MORTGAGE

FHA Case No.

451-0891153

MIN 1000103000198724981

THIS MORTGAGE ("Security Instrument") is given on June 30, 2006
The Mortgagor is Rondel Emile and Claude Emile

whose address is 741 RIVER ST, Providence, RI 02908-

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS. CCO Mortgage Corp.

("Lender") is organized and existing under the laws of State of New York , and
has an address of 10561 Telegraph Road, Glen Allen, VA 23059
. Borrower owes Lender the principal sum of
two hundred thirteen thousand two hundred ninety and 00/100
Dollars (U.S. $213,290.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on July 1, 2036
. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance
of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower
does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and

FHA Rhode Island Mortgage with MERS - 4/96

-4N(RI) (0609)
Page 1 of 8

Amended 2/01

Initials LE RE

VMP Mortgage Solutions, Inc.

0804enhcnull (2/03)

0198972498

DOC NO: 00005351
BOOK 2237 PAGE 306

assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in Providence

County, Rhode Island:

Parcel ID Number: Plat 2 Lot 394                                          [Street]
which has the address of 21 Dodge Street
North Providence          [City], Rhode Island 02904      [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

Initials: _____

4N(RI) (9809)                        Page 2 of 8
00CP4DR.cliff (2/03)                                                    001C8Y2468

DOC NO: 0000S2S1
BOOK 2287 PAGE 307

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned or the loan is in default.

INITIALS _CE_ _RE_

BOOK NO: 2289 PAGE 308

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

_Initials_ C.E. R.E.

DOC NO: 00005351
BOOK 2287 PAGE 309

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

-4N(RI) 2508.

2000 and 4 of1 (3/03)

Page 5 of 8

0016097X486

Case 1:12-cv-00036-NMM-DW   Document 1-31   Filed 09/27/12   Page 17 of 45 PageID #: 165

DOC NO: 00005351
BOOK  2287 PAGE  310

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials  CE   RÉ

VMP-4N(R)（9508）
DC24N6N.uff （2/03）
Page 6 of 8
EC18B92498

DOC NO: 00005351 311
BOOK 2227 PAGE

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of notice of sale to Borrower as provided in paragraph 13. Lender shall publish the notice of sale, and the Property at any sale. The in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Waiver of Homestead. If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

21. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider    ☐ Growing Equity Rider    ☐ Other [specify]
☐ Planned Unit Development Rider    ☐ Graduated Payment Rider

*Initials* CE RF

-4N(RI) (0500)
D5CeN7-(x.II (2/02)

Page 7 of 8

CC-8072406

DOC NO: 00008351
BOOK 2287 PAGE 312

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _Claude Emile_____ (Seal)
                                    Claude Emile                 -Borrower

_____    _Rondel Emile_____ (Seal)
                                    Rondel Emile                 -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                                -Borrower

STATE OF RHODE ISLAND, KENT                              County ss:
    On this   30th   day of   June, 2006,    , in   Warwick, Rhode Island
in said County, before me personally appeared

    CLAUDE EMILE AND RENDEL EMILE

                                        each and all to me known and known
to me to be the person(s) executing the foregoing instrument and acknowledged said execution to be his/her/their free
act and deed.

                                        _____
                                        Notary Public

                                        Thomas E. McDermott
                                        Notary Public
                                        My Commission Expires:   6/8/2009

VMP-6N(RI) (0000)
Page 2 of 3

DOC NO: 00005351
BOOK 2287 PAGE 313

Exhibit 'A'

That certain tract or parcel of land, with all the buildings and other improvements thereon, situated on the westerly side of Dodge Street and the easterly side of Maineia Avenue, in said Town of North Providence, comprising the whole of lots numbered sixty-six (66) and one hundred one (101) and the northerly fifteen (15) feet in width by the entire depth of lots numbered sixty-five (65) and one hundred two (102) on that plat of land entitled "Mineral Spring Park North Providence R I Owned by J.W. Wilbur A. ... E'ot Eng'r. Boston, Mass. Sept. 16, 1903", which said plat is on file in the office of the Records of Deeds in said Town of North Providence on Plot Card No. 13.

Said parcel faces easterly on the westerly line of Dodge Street on which it measures forty-five (45) and holding that width extends back westerly to the easterly line of Maineia distance of one hundred forty (140) feet.

Being the same premises conveyed to this grantor by Warranty Deed of Frank Romano et ux dated September 25 1958 and recorded in Land Evidence Records of the Town of North Providence in Deed Book 54 at page 92.

PROPERTY ADDRESS:

21 DODGE STREET,
NORTH PROVIDENCE RI.

AP 2 LOT 394

RECEIVED FOR RECORD
NORTH PROVIDENCE- RI

Jul 03,2006 01:56:47P

MaryAnn DeAngelus

REGISTER/LAND RECORDS-0573-04ND(74)

DOC NO: 00005350
BOOK 2287 PAGE 303

Exhibit "A"

That certain tract or parcel of land, with all the buildings and other improvements thereon, situated on the westerly side of Dodge Street and the easterly side of Mainella Avenue, in said Town of North Providence, comprising the whole of lots numbered sixty-six (66) and one hundred one (101) and the northerly fifteen (15) feet in width by the entire depth of lots numbered sixty-five (65) and one hundred two (102) on that plat of land entitled "Mineral Spring Park North Providence R.I. Owned by J. W. Wilbur A. L. Eliot Eng'r. Boston, Mass. Sept. 16, 1903", which said plat is on file in the office of the Recorder of Deeds in said Town of North Providence on Plat Card No. 13.

Said parcel faces easterly on the westerly line of Dodge Street on which it measures forty-five (45) feet and holding that width extends back westerly to the easterly line of Mainella Avenue a distance of one hundred forty (140) feet.

Being the same premises conveyed to Alfred L. Proteno by Warranty deed of Frank Romano et ux dated September 25, 1958 and recorded in Land Evidence Records of the Town of North Providence in Deed Book 54 at page 92.

PROPERTY ADDRESS:

21 Dodge Street
North Providence, RI 02904
Assessor's Plat -2 Lot-394

# EXHIBIT B

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790

DOC NO: 00009996
BOOK  2733 PAGE    316

## CORPORATE ASSIGNMENT OF MORTGAGE

North Providence Town, Rhode Island
SELLER'S SERVICING #:0202175261 "EMILE"
SELLER'S LENDER ID#: G09
INVESTOR'S LOAN #: 0102301909
POOL #: 00658035CD
OLD SERVICING #: 0019872498

MERS #: 100010300198724981 SIS #: 1-888-679-6377

Date of Assignment: July 13th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CCO MORTGAGE
CORP., ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI  48501
Assignee: WELLS FARGO BANK N.A., NATIONAL ASSOCIATION at 1 HOME CAMPUS, DES MOINES, IA  50328

Executed By: RENDEL  EMILE  AND  CLAUDE  EMILE  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR CCO MORTGAGE CORP. IT SUCCESSORS AND ASSIGNS
Date of Mortgage: 06/30/2006 Recorded: 07/03/2006 in Book/Reel/Liber: 2287 Page/Folio: 305 as Instrument No.:
00005351  In North Providence Town, State of Rhode Island.

Property Address: 21 DODGE STREET, NORTH PROVIDENCE, RI  02904

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having
an original principal sum of $213,290.00 with interest, secured thereby, with all moneys now owing or that may
hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and
provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's
beneficial interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CCO MORTGAGE CORP., ITS
SUCCESSORS AND ASSIGNS
On __7/15/2011__

By: _____
    Keegan Brown          , Assistant
Secretary

STATE OF Minnesota
COUNTY OF Dakota

On __7/15/2011__, before me, __Steven T Schmidt__, a Notary Public in and for Dakota in the
State of Minnesota, personally appeared __Keegan Brown__, Assistant Secretary, personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Notary Expires: 1/31/2014

STEVEN T SCHMIDT
Notary Public
Minnesota
My Commission Expires Jan. 31, 2014

(This area for notarial seal)

RECEIVED FOR RECORD
NORTH PROVIDENCE, RI

"FD FDWFEM*07/13/2011 12:26.11 PM" WFEM01WFEMA000000000000000030103" RI_NPRO* 0202175261 RISTATE_MORT_ASSIGN_ASSN **FDWFEM*

Jul 28, 2011 11:12:19A

MaryAnn DeAngelus

Town Clerk

# EXHIBIT C

*Exhibit F*

**Consent of Incorporator**
*Of*
**Mortgage Electronic Registration Systems, Inc.**

The undersigned, being the sole incorporator of Mortgage Electronic Registration Systems, Inc. (the "Corporation"), hereby consents to the adoption of the following resolution:

   *RESOLVED, that the By-laws, attached hereto as an exhibit, be and hereby are adopted as the Bylaws of the Corporation.*

This action shall become effective at 12:01 a.m. on January 1, 1999.

William C. Hultman
Incorporator



*BYLAWS*
*OF*
*MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.*
*A Delaware Corporation*

## ARTICLE I

### OFFICES

Section 1. <u>Registered Office</u>. The registered office of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (the "Corporation") shall be at 32 Loockerman Square, Suite L-100, in the City of Dover, County of Kent, State of Delaware 19901. The registered agent of the Corporation at such address is The Prentice-Hall Corporation System, Inc.

Section 2. <u>Other Offices</u>. The Corporation also may have offices, including its principal office, at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or the business or the Corporation may require.

## ARTICLE II

### STOCKHOLDERS

Section 1. <u>Stockholders</u>. The voting, dividend and distribution rights of the stockholders of the Corporation (the "Stockholders" shall be as set forth in the certificate of Incorporation, as amended from tune to time (the "Certificate of Incorporation").

Section 2. <u>Designation of Persons to Act on Behalf of Stockholders</u>. Where a Stockholder is other than an individual, the Stockholder shall designate, in writing, to the Corporation from time to time the name and title of the individual authorized to act for that Stockholder in casting votes and exercising any other privilege of the Stockholder.

## ARTICLE III

### MEETINGS OF STOCKHOLDERS

Section 1. <u>Place of Meeting</u>. All meetings of the Stockholders shall be held at such places within or without the State of Delaware, as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver thereof.

Section 2. <u>Annual Meeting</u>. An annual meeting of the Stockholders for the election of Directors and the transaction of other business shall be held in each year,

commencing with the year 1999, at such date and time as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting. At such meeting the Stockholders shall transact any business lawfully before them and shall elect Directors to succeed those whose terms have expired as of the date of such annual meeting.

Section 3. Notice of Annual Meeting. Stockholders shall be given written notice of an annual meeting of the Stockholders, which notice shall state the place, date and hour of the meeting and shall be given in the manner provided in Article V, Section 1 of these Bylaws. This written notice shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to each Stockholder entitled to vote at such meeting.

Section 4. Special Meetings. Unless otherwise prescribed by statute or by the Certificate of Incorporation, special meetings of the Stockholders may be called for any purpose or purposes by the chairman of the board, the president, the secretary, or by a majority of the Directors then in office.

Section 5. Notice of Special Meeting. Written notice of a special meeting of the Stockholders shall be given, which shall state the place, date and hour of the meeting, and the purpose or purposes for which the meeting is called, in the manner provided in Article V, Section 1 of these Bylaws. This written notice shall be given to each Stockholder entitled to vote at such meeting, not less than ten (10) nor more than sixty (60) days before the date of the meeting.

Section 6. Business of Special Meeting. Business transacted at any special meeting of the Stockholders shall be limited to the purposes stated in the notice or waiver thereof.

Section 7. Waiver of Notice. Whenever notice is required to be given by law, the Certificate of Incorporation or these Bylaws, a written waiver, signed by the Stockholder entitled to such notice, whether before or after the time of the meeting stated therein shall be deemed equivalent to notice. Neither the business to be transacted at, nor the purpose of, a regular or special meeting of the Stockholders need be specified in any written waiver of notice. The attendance of a Stockholder at a meeting shall constitute waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened.

Section 8. Quorum. The presence, in person or by proxy, of a majority of the Stockholders entitled to vote on the subject matter at a meeting shall constitute a quorum, except as otherwise provided by law, the Certificate of Incorporation or these Bylaws. If, however, such quorum shall not be present or represented at any meeting of the Stockholders, the Stockholders entitled to vote thereat, present in person or represented by proxy, shall have the power to adjourn the meeting from time to time, without notice other than announcement at the meeting of the time and place of the continuation of the adjourned meeting, until a quorum shall be present or represented. At such adjourned meeting, at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the

2

original meeting. In determining the Stockholders entitled to vote on the subject matter at a meeting, only those Stockholders enrolled in the Corporation's books as of the last business day immediately preceding the date of the notice shall be deemed entitled to vote on such subject matter.

Section 9. Proxies. A Stockholder entitled to vote may vote either in person or by proxy signed and dated in writing by the Stockholder or its duly authorized attorney in fact, but no proxy shall be voted on after three (3) years from its date, unless the proxy provides for a longer period.

Section 10. Voting by Stockholders. Each Stockholder shall be entitled at every meeting of the Stockholders to one (1) vote in person or by proxy. Stockholders shall vote together as a single class on all matters presented to the Stockholders for a vote except for the election of Directors, which shall be as provided in the Certificate of Incorporation, and except to the extent otherwise required under the Delaware General Corporation Law.

Section 11. Conduct of Meetings. At any meeting of the Stockholders, if neither the chairman of the Board of Directors, nor a person designated by the Board of Directors to preside at the meeting shall be present, the Stockholders present shall appoint a presiding officer for the meeting. If neither the secretary nor an assistant secretary is present, the appointee of the person presiding at the meeting shall act as secretary of the meeting.

Section 12. Vote Required for Action. When a quorum is present at any meeting, the affirmative vote of the majority of the Stockholders present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the Stockholders, unless a greater number of affirmative votes is required by law, the Certificate of Incorporation or these Bylaws.

## ARTICLE IV

## DIRECTORS

Section 1. Management by Directors. The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute, the Certificate of Incorporation, or these Bylaws directed or required to be exercised or done by the Stockholders.

Section 2. Number Constituting Entire Board of Directors: Classes. The number of Directors that shall constitute the entire Board of Directors shall consist of not less than one (1) and not more than six (6) individuals; provided, however, that the Board shall at all times include at least one independent Director (as defined in the Certificate of Incorporation). No Director need be a resident of Delaware.

3

Section 3.  <u>Nomination and Election of Directors</u>.  The Board of Directors shall nominate a person or persons to fill each vacancy created by the expiration of the term of any Director then in office.   The Board of Directors may select its nominees from the recommendations of the Nominating Committee, as provided in Section 16 below.  The Board of Directors shall be elected by ballot of the Stockholders eligible to vote in accordance with the Certificate of Incorporation.  Each Director shall hold office until his successor is elected and qualified, or until his earlier resignation, removal, automatic disqualification, or death.

Section 4.  <u>Resignation, Removal and Automatic Disqualification</u>.  Any Director may resign at any time upon written notice to the Corporation.   In accordance with the Certificate of Incorporation, any Director may be removed, only for cause, by a vote of a majority of the entire Board of Directors.  In the event that, while in the office, a Director shall cease to have the qualifications for such office as specified in the Certificate of Incorporation, then from and after the date upon which such Director ceases to be qualified, such Director automatically shall be disqualified to serve as a Director and shall cease to be a Director of the Corporation, without any action by the Board of Directors.

Section 5.  <u>Filling of Vacancies</u>.  All vacancies caused by resignation, removal, automatic disqualification, or death of a Director and occurring between annual meetings of the Stockholders shall be filled promptly by majority vote of the Directors then in office.  Any replacement Director shall hold office until expiration of the term designated by the Board in creating the vacancy and until his successor is duly elected and shall qualify, or until his earlier resignation, removal, automatic disqualification or death.  If there are no Directors in office, then an election of Directors may be held in the manner provided by Title 8, Section 223 of the Delaware General Corporation Law.

Section 6.  <u>Place of Meetings</u>.  The Board of Directors of the Corporation may hold meetings, both regular and special, either within or outside the State of Delaware.

Section 7.  <u>Annual Meeting</u>.  The first meeting of each newly elected Board of Directors shall be held immediately after the annual meeting of the Stockholders and at the same place, and no notice of such meeting shall be necessary to the newly elected Directors in order legally to constitute the meeting, provided a quorum shall be present.  In the event such meeting is not held at that time and place, the meeting may be held at such time and place as shall be specified in a notice given as provided in Section 9 for special meetings of the Board of Directors, or as shall be specified in a written waiver signed by all of the Directors.

Section 8.  <u>Regular Meetings</u>.  Regular meetings of the Board of Directors may be held without other notice at such time and at such place as shall from time to time be determined by the Board.

Section 9.  <u>Special Meetings</u>.  Special meetings of the Board may be called by the chairman of the Board on seven (7) day's notice to each Director in the manner provided in Article V, Section 1; special meetings shall be called by the chairman of the Board or secretary, in like manner and on like notice, on the written request of a majority of the Directors.

MERS  425

Section 10. <u>Quorum; Vote Required for Action</u>. A quorum shall be a majority of the entire Board of Directors. The act of a majority of the Directors present at such meeting, shall be the act of the Board of Directors, except as may be otherwise specifically provided by statute or by the Certificate of Incorporation. If quorum shall not be present at any meeting of the Board of Directors, the Directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting of the time and place of the adjourned meeting, until a quorum shall be present.

Section 11. <u>Payment of Dividends</u>. Those Stockholders entitled to receive dividends and the method of calculating the amount of the dividends to be paid such Stockholders shall be determined by the Board of Directors in accordance with the Certificate of Incorporation and applicable law.

Section 12. <u>Participation by Conference Telephone</u>. Stockholders of the Board of Directors, or any committee thereof, may participate in a meeting of such Board or committee by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting pursuant to this subsection shall constitute presence in person at such meeting.

Section 13. <u>Action Without Meeting</u>. Unless otherwise restricted by the Certificate of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if all members of the Board or such committee consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or of such committee.

Section 14. <u>Compensation</u>. Directors shall not be compensated for their services as Directors, but if authorized by the Board of Directors, each Director may be entitled to receive from the Corporation reimbursement of the expenses incurred in attending any regular or special meetings of the Board. Nothing herein contained shall be construed to preclude any Director from serving the Corporation in any other capacity and receiving compensation therefor.

Section 15. <u>Committees</u>. The Board of Directors may designate one (1) or more committees, each committee to consist of one (1) or more of the Directors of the Corporation. The Board may designate one (1) or more Directors as alternate members of any committee to replace any absent or disqualified member at any meeting of the committee. Any such committee, to the extent provided in the resolution establishing the committee, and subject to any restrictions imposed by statute, shall have and may exercise the powers of the Board of Directors in the management of the business affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers that may require it; provided, however, that a committee may not (i) recommend to the Stock holders any action that requires Stockholder approval; (ii) adopt, amend or repeal these Bylaws; or (iii) take any action that requires the affirmative vote of the independent Director (as defined in the Certificate of Incorporation), unless such independent Director is present. In the absence or disqualification of any member of any such committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not a quorum, may unanimously appoint another Director

5

to act at the meeting in the place of any such absent or disqualified member. Each committee shall have such name as may be determined from time to time by resolution adopted by the Board of Directors. If authorized by the Board of Directors, the expenses of members of standing or special committees for attending committee meetings may be reimbursed.

Section 16. <u>Nominating Committee</u>. The Board of Directors may designate a Nominating Committee consisting of up to three (3) Directors. The Nominating Committee shall, prior to notice of any annual meeting of Stockholders or any meeting of the Board at which a vacancy in the Board shall be filled recommend to the Board one (1) or more individuals for nomination as Directors, provided that the Nominating Committee shall comply with the provisions in the Certificate of Incorporation relating to qualifications Directors when making any recommendation to the Board. The Nominating Committee shall recommend sufficient candidates to fill all Board vacancies.

Section 17. <u>Advisory Council</u>. The Board of Directors may, by resolution passed by a majority of the whole Board, designate one (1) or more advisory councils. The Corporation shall not pay members of any advisory council any fees for their services on such council nor shall it reimburse them for any expenses incurred in attending meetings of such council.

Section 18. <u>Minutes of Committee Meetings</u>. Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

Section 19. <u>Presumption of Assent</u>. A Director of the Corporation who is present at a meeting of the Board of Directors at which action on any corporate matter is taken shall be presumed to have assented to the action unless (i) he objects at the beginning of the meeting, or promptly upon his arrival, to holding the meeting or transacting specific business at the meeting or (ii) he votes against, or abstains from, the action taken.

# ARTICLE V

## NOTICES

Section 1. <u>Manner of Giving Notice</u>. Whenever, under the provisions of Title 8, Section 222 of the Delaware General Corporation Law, the Certificate of Incorporation or these Bylaws, there is a requirement that notice be given to any Director or Stockholder in writing, by mail, addressed to such Director or Stockholder, at his address as it appears in the records of the Corporation, with postage thereon prepaid, such notice shall be deemed to be given at the time when the same shall be deposited in the United States mail. Notice also may be given by telegram, facsimile or overnight express delivery and, in each case, shall be deemed given at the time it is sent to the Stockholder at its address as it appears in the records of the Corporation.

Section 2. <u>Waiver of Notice</u>. Whenever any notice is required to be given under the Delaware General Corporation Law, the Certificate of Incorporation, or these

6

Bylaws, a waiver thereof in writing, signed by the person or persons entitled to said notice, whether before or after the time stated therein, shall be deemed equivalent to notice as provided in Title 8, Section 229 of the Delaware Corporation Law. Attendance of a person at a meeting of the Stockholders, Directors, or members of a committee of Directors, shall constitute a waiver of notice of such meeting, except when the Stockholder, Director or committee member attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Stockholders, Directors, or committee members needs be specified in any written waiver of notice unless so required by the Certificate of Incorporation or these Bylaws.

## ARTICLE VI

### OFFICERS

Section 1. Required Officers. The officers of the Corporation shall be chosen by the Board of Directors and shall include a president and a secretary. The same person may hold any number of offices unless otherwise provided by the Certificate of Incorporation or these Bylaws.

Section 2. Additional Officers. The Board of Directors may appoint one (1) or more vice presidents, treasurers and such other officers agents, giving any of them such further designation or alternate titles, as it shall deem necessary, who shall hold their offices for such terms and shall exercise such powers and perform such duties the Board shall determine from time to time.

Section 3. Election of Officers. The Board of Directors shall choose the officers of the Corporation at its first meeting after each annual meeting of the Stockholders, or at any other meeting if the Board of Directors so elects.

Section 4. Compensation. The salaries of all officers and agents of the Corporation shall be fixed by or in the manner prescribed by the Board of Directors.

Section 5. Tenure. Each officer of the Corporation shall hold office until his successor is elected and qualified or until his earlier resignation, removal or death. Any officer elected or appointed by the Board of Directors may be removed at any time by the affirmative vote of a majority of the entire Board of Directors. Any officer may resign at any time upon written notice to the Corporation. Any vacancy occurring in any office of the Corporation shall be filled by or in the manner prescribed by the Board of Directors.

Section 6. Chairman of the Board. The chairman of the Board shall preside over the meetings of the Directors and of the Stockholders at which he shall be present. The chairman of the Board shall perform such other duties as may be assigned by the Directors. Except where by law the signature of the president is required, in the absence of a president or any officer given the power to serve as acting president, the chairman of the Board shall

MERS 428

possess the same power as the president to sign deeds, mortgages, bonds, contracts or other instruments. Until such time as the Board elects a president, the chairman of the Board shall perform the functions of the president described in Section 7 below, as the chairman of the Board deems desirable.

Section 7.  President.  The president shall be the chief executive officer of the Corporation and shall be responsible for the general and active supervision and management of the Corporation's business.  The president may sign, on behalf of the Corporation, any deeds, mortgages, bonds, contracts or other instruments that the Board of Directors has authorized to be executed, except in cases where the signing and execution thereof shall be expressly delegated by the Board of Directors or by these Bylaws to some other officer or agent of the Corporation, or shall be required by law to be otherwise signed or executed, and, in general, shall perform all duties incident to the office of president and such other duties as may be prescribed by the Board of the Directors from time to time.

Section 8.  Vice President.  In the absence of the president, the vice president, if any, or in the event there be more than one (1) vice president, the vice presidents in the order designated, or in the absence of any designation, then in the absence of their election, shall perform the duties of the president, and when so acting, shall have all the powers of and be subject to all the restrictions upon the president.  Vice presidents shall generally assist the president and shall perform such other duties and have such other powers as the Board of Directors may from time to time prescribe.

Section 9.  Secretary.  The secretary shall attend all meetings of the Board of Directors and of the Stockholders and shall record all the proceedings of such meetings in one (1) or more books to be kept for that purpose, and shall perform like duties for any committee or advisory council when so requested by such committee or advisory council.  The secretary shall give, or cause to be given, required notice of all meetings of the Stockholders, the Board of Directors and committees, and shall perform such other duties as may be prescribed by the Board of Directors.  The secretary shall have custody of the books and records of the Corporation as the Board of Directors may direct.  The secretary shall have custody of the corporate seal of the Corporation and shall have authority to affix the same to any instrument requiring it and when so affixed, it may be attested by the secretary's signature.  The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing thereof by his signature.

Section 10.  Assistant Secretary.  Any assistant secretary elected by the Board of Directors shall have the same duties as prescribed for the secretary and shall perform such duties at the direction of the secretary to assist the secretary, and in the absence of the secretary at the direction of the president or any vice president, and otherwise as directed, from time to time, by the Board of Directors.

Section 11.  Treasurer.  The treasurer shall be the chief financial officer of the Corporation; shall have custody of the corporate funds and securities; shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation; shall deposit all moneys and other valuable effects in the name and to the credit of the Corporation in

MERS  429

such depositories as may be designated by the Board of Directors; shall disburse the funds of the Corporation as may be ordered by the Board of Directors, taking proper vouchers for such disbursements; shall render to the chairman of the board and the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all his transactions as chief financial officer and of the financial condition of the Corporation; and shall perform such other duties and have such other powers as the Board of Directors or the president may from time to time prescribe.

# ARTICLE VII

## CERTIFICATES OF STOCK

Section 1. _General_. Every holder of stock in the Corporation shall be entitled to have a certificate, signed by, or signed in the name of the Corporation by, the chairman of the board, the president or a vice president and either the treasurer or the secretary or an assistant secretary of the Corporation, certifying the number of shares owned by the Stockholder in the Corporation.

Section 2. _Facsimile_. Where a certificate is countersigned (i) by a transfer agent other than the Corporation or its employee, or, (ii) by a registrar other than the Corporation or its employee, any other signature on the certificate may be a facsimile. In case any officer, agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer, transfer agent or registrar at the date of issue.

Section 3. _Lost Certificates_. The Board of Directors may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed. When authorizing such issue of a new certificate or certificates, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost, stolen or destroyed certificate or certificates, or his legal representative, to advertise the same in such manner as it shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

Section 4. _Transfer of Stock_. Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares in compliance with the requirements of the Delaware General Corporation Law, it shall be the duty of the Corporation to issue a new certificate to the person entitled thereto, cancel the old certificate and record the transaction upon its books; provided, however, that any such transfer must be in compliance with the Certificate of Incorporation.

Section 5. _Fixing Record Date_. In order that the Corporation may determine the Stockholders entitled to notice of or to vote at any meeting of Stockholders or any adjournment

MERS 430

thereof or to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may fix, in advance, a record date, which shall not be more than sixty nor less than ten days before the date of a Stockholder meeting, nor more than sixty days prior to the date of the payment of such dividends, the distribution of such rights, the exercise of such rights or the taking of any other lawful action. If no record date is fixed, the record date for determining Stockholders (a) entitled to notice of or to vote at a meeting of Stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held; and (b) for any other purpose shall be the close of business on the day on which the Board of Directors adopts the resolution relating thereto. A determination of Stockholders of record entitled to notice of or to vote at a meeting of Stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

Section 6. <u>Registered Stockholders</u>. The Corporation shall be entitled to treat the record holder of any shares of the Corporation as the owner thereof for all purposes, including all rights deriving from such shares, and shall not be bound to recognize any equitable or other claim to, or interest in, such shares or rights deriving from such shares, on the part of any other person, including, but without limiting the generality thereof, a purchaser, assignee or transferee of such shares or rights deriving from such shares, unless and until such purchaser, assignee, transferee or other person becomes the record holder of such shares, whether or not the Corporation shall have either actual or constructive notice of the interest of such purchaser, assignee, transferee or other person. Any such purchaser, assignee, transferee or other person shall not be entitled to receive notice of the meetings of Stockholders, to vote at such meetings, to examine a complete list of the Stockholders entitled to vote at meetings, or to own, enjoy, and exercise any other property or rights deriving from such shares against the Corporation, until such purchaser, assignee, transferee or other person has become the record holder of such shares.

Section 7. <u>Stockholder's Rights of Inspection</u>. Any Stockholder, in person or by attorney or other agent, shall upon written demand under oath stating the purpose thereof have the right during the usual hours for business to inspect for any proper purpose the Corporation's stock ledger, a list of its Stockholders, and its other books and records, and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a Stockholder. In every instance where an attorney or other agent shall be the person who seeks the right to inspection, the demand under oath shall be accompanied a power of attorney or such other writing which authorizes the attorney or other agent to so act on behalf of the Stockholder. The demand under oath shall be directed to the Corporation at its place of business. As used in this Section, "Stockholder" means a Stockholder of record.

Section 8. <u>Restrictive Legend on Stock Certificates</u>. No Stockholder will transfer shares of stock if such transfer would be in violation of federal or state securities laws. The Corporation shall endorse on any certificate representing shares issued by the Corporation, a legend to the effect that the shares represented by such certificate have not been registered

MERS 431

under the Securities Act of 1933, as amended, or any state securities laws, and may not be sold, transferred, assigned, pledged, or otherwise disposed of except pursuant to an opinion of counsel satisfactory to the Corporation that they may be transferred in compliance with such Act or any applicable state securities laws.

## ARTICLE VIII

### GENERAL PROVISIONS

Section 1. Fiscal Year. The fiscal year of the Corporation shall be January 1 to December 31. The Board of Directors shall have the power to change the fiscal year of the Corporation from time to time.

Section 2. Checks and Drafts. The Corporation shall establish a bank account for deposit of the funds of the Corporation and the drawing of checks or drafts thereon. All checks or drafts drawn on such account shall require the signature of one (1) officer of the Corporation, or of such other person or persons as may be authorized by the Board of Directors in the absence of any officer, unless the Board of Directors shall take action to require more than one (1) signature. The appointment of additional signatories of the bank account and the opening of additional bank accounts shall require the approval of the Board of Directors.

Section 3. Corporate Seal. The corporate seal, as adopted by resolution of the Board of Directors, shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware. " The seal may be used by causing it or a facsimile thereof to be impressed, affixed, or reproduced in any other manner.

Section 4. Indemnification. Except as otherwise provided in the Certificate of Incorporation, the Corporation shall indemnify, and advance expenses to, its Directors and officers, and all persons who at any time served as Directors or officers of the Corporation, to the fullest extent permitted, and in the manner provided by, Title 8, Section 145 of the Delaware General Corporation Law, or any successor provisions, and shall have power to make any other or further indemnity permitted under the laws of the State of Delaware. The Board of Directors may provide such indemnification to others by resolution.

Section 5. Usage of Pronouns. All masculine pronouns are intended to include feminine pronouns and vice versa.

## ARTICLE IX

### AMENDMENTS

Section 1. Amendment of Bylaws, Power of Directors. As specified in the Corporation's Certificate of Incorporation, the Board of Directors shall have the power to amend or repeal these Bylaws or to adopt new Bylaws by the vote of the Directors or written consent of all of the Directors.

MERS 432

# EXHIBIT D

**HARMON LAW OFFICES, P.C.**
150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
MAILING ADDRESS:
P.O. BOX 610389
NEWTON HIGHLANDS, MA 02461-0389
TEL (617) 558-0500
FAX (617) 244-7304

*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

March 13, 2012

VIA CERTIFIED AND FIRST CLASS MAIL

Attorney John B. Ennis
1200 Reservoir Avenue
Cranston, RI 02920

RE:

**Matter** - 201106-1068
**Wells Fargo Bank, NA – SC** 0202175261
**Investor:** HUD

**Emile, Rendel**
21 Dodge Street
North Providence, RI 02904

Dear Attorney Ennis:

Please consider this communication a response to your letter addressed to this office dated March 9, 2012. This office represents Wells Fargo Bank, NA, with regard to the above identified matter.

As verification of the mortgage debt, default and payment application(s), enclosed please find a copy of the mortgage from Rendel Emile and Claude Emile dated June 30, 2006 in the original principal amount of $213,290.00 which is currently held by Wells Fargo Bank, NA. I have also enclosed copies of the corresponding Promissory Note, Assignment of Mortgage, and payment history in regards to this matter. Please note that providing copies of these documents is in compliance with the Fair Debt Collection Practices Act (FDCPA).

Under the terms and conditions of the mortgage, your client is in default if he/she/they fail to make payments when due. Furthermore, your client agreed to pay all costs and expenses incurred by mortgagee/lender in collecting, enforcing or protecting the mortgagee's/lender's rights and remedies under the security agreement including, but not limited to, attorneys' fees, court costs, and other legal expenses. The default was not cured and thereafter, Wells Fargo Bank, NA exercised its right to demand the full amount owed for this account immediately due and payable.

**PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Attorney John B. Ennis
Re: Emile, Rendel/Emile, Claude
March 13, 2012
Page 2

The enclosed payment history dated March 11, 2012 indicates that the account went into default in April of 2010 and has not been brought current to date. As evident by the payment history, this account has experienced a pattern of irregular and non-payments. I have included a reference of the various Wells Fargo Transaction Types and Codes to help you understand what has been occurring with this account. Please be advised that the fees, costs, advances or expenses referenced in the payment history may not constitute a complete or accurate measure of the total fees and costs arising from this matter to date. If you would like updated quotes, please contact our office. I have also requested that a reinstatement and final payoff quote be sent directly to you under separate cover.

Having provided verification of your client's debt and default and providing you with a current reinstatement quote, my client reserves the right to proceed with its pending foreclosure unless and until your client cures the default in accordance with the mortgage terms.

Very truly yours,

Kevin J. Burke, Esq.

Certified Article Number

7196 9008 9111 2821 1691

SENDERS RECORD

**PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

# EXHIBIT E

0019872498

**Multistate**

# NOTE
## MIN: 100010300198724981

FHA Case No.

**451-0891153**

June 30, 2006
[Date]


COPY

21 Dodge Street   North Providence, RI   02904
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **CCO Mortgage Corp.**

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of **two hundred thirteen thousand two hundred ninety and 00/100**

Dollars (U.S. $ 213,290.00                    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **six and three-quarters** percent (          6.750 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **August 1         , 2006         **. Any principal and interest remaining on the first day of **July 2036         **, will be due on that date, which is called the "Maturity Date."

**(B) Place**
Payment shall be made at **CCO Mortgage Corp., 10561 Telegraph Road, Glen Allen, VA 23059** or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $ **1,383.40**          . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**FHA Multistate Fixed Rate Note - 10/95**

VMP -1R (0210).02
VMP Mortgage Solutions (800)521-7291
Page 1 of 2                    Initials: _C.E._ _R.E._

D001r1.uff (2/03)

0019872498

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **four** percent ( **4.000** %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
Claude Emile                  -Borrower

_____ (Seal)
Rendel Emile                  -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

PAY TO THE ORDER OF
Wells Fargo Bank, N.A.
Without Recourse
BY CCO Mortgage Corp
_____ (Seal)
Darlene L. Waller, Vice President  -Borrower

_____ (Seal)
                              -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF
Wells Fargo Bank, N.A.

By _Lori K. Venegonia_
Lori K. Venegonia
Vice President Loan Documentation

_____ (Seal)
                              -Borrower

WITNESS AS TO ALL
THOMAS E. McDERMOTT

VMP®-1R (0210).02                    Page 2 of 2

D001r2.uff (2/03)

CA12- 366M

JS-44 (Rev. 3/08 RI)

# CIVIL COVER SHEET

## I. (a) PLAINTIFFS
CLAUDE EMILE

(b) County of Residence of First Listed Plaintiff **PROVIDENCE**
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)

John B. Ennis
1200 Reservoir Avenue
Cranston, RI 02920 (401)943-9230

## DEFENDANTS
WELLS FARGO BANK, NA, et al

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

FILED

MAY 1 5 2012

U.S. DISTRICT COURT
DISTRICT OF R.I.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### Admiralty
☐ 340 Marine(Injury to Seamen)
☐ 120 Marine (Other)

### Admin/Agency Appeals Other
☐ 890 Other Statutory Actions (APA Appeals, IDEA Appeals, Other)

### Bankruptcy
☐ 422 Appeal 28 U.S.C. § 158
☐ 423 Withdrawal 28 U.S.C. § 157

### Banks and Banking
☐ 140 Negotiable Instruments
☐ 430 Banks and Banking
☐ 875 Customer Challenge to Subpoena (12 U.S.C. § 3410)

### Anti-trust
☐ 410 Anti-Trust

### Construction Contracts
☐ 130 Miller Act
☐ 190 Other Contracts

### Securities Law & Stockholder Suits
☐ 160 Stockholders' Suits
☐ 850 Securities/ Commodities/ Exchange

### Other - Business/Comm.
☐ 196 Franchise
☐ 490 Cable/Satellite TV

### Consumer Credit
☐ 371 Truth in Lending
☐ 480 Consumer Credit
☐ 190 Other Contracts

### Constitutional Law
☐ 950 Constitutionality of State Statutes
☐ 440 Other Civil Rights (Constitutionality of Federal Statutes)

### Elections and Voting
☐ 400 State Reapportionment
☐ 441 Voting

### Other - Civil Rights
☐ 440 Other Civil Rights
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 446 Americans with Disabilities

### Copyright & Trademark (Intellectual Property)
☐ 820 Copyright
☐ 840 Trademark

### Employment Discrimination
☐ 442 Employment
☐ 445 Americans with Disabilities-Employment
☐ 440 Other -Civil Rights

### ERISA
☐ 791 Employment Ret. Inc. Security Act

### Other Employment Benefits
☐ 190 Other - Contract
☐ 442 Other - Employment

### Environmental Law
☐ 893 Environmental Matters

### Immigration
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainees
☐ 465 Other Immigration Actions

### Indian Law
☐ 890 Other Statutory Actions

### Insurance
☐ 110 Insurance Contract

### Labor and Occupational Safety
☐ 660 Occupational Safety/Health
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 730 Labor/Management Reporting and Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation

### Miscellaneous Civil Cases
☐ 150 Recovery of Overpayment and Enforcement of Judgment (Collections)
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (excluding Veterans)
☐ 153 Recovery of Overpayment of Veterans' Benefits
☐ 370 Other Fraud
☐ 440 Other Civil Rights (Immigration/Deportation)
☐ 450 Commerce
☐ 460 Deportation
☐ 610 Agriculture
☐ 620 Other Food and Drug
☐ 625 Drug related seizure of property
☐ 630 Liquor Laws
☐ 640 Railroad and Truck

### Miscellaneous Civil Cases Continued
☐ 650 Airline Regs.
☐ 690 Other (Forfeiture)
☐ 690 Other (Health Care)
☐ 810 Selective Service
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party (26 U.S.C. § 7609)
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination under Equal Access to Justice

### Patents (Intellectual Property)
☐ 830 Patents

### Prisoner Petitions
☐ 510 Motions to Vacate Sentence (2254)
☐ 510 Motions to Vacate Sentence (2255)
☐ 530 General (Habeas)
☐ 535 Death Penalty
☐ 550 Civil Rights (1983)
☐ 555 Prison Conditions(1983)

### Real and Personal Property
☐ 210 Land Condemnation
☒ 220 Foreclosure
☐ 230 Rent, Lease and Ejectment
☐ 240 Torts to Land
☐ 290 All other Real Property
☐ 380 Other Personal Property Damage

### RICO
☐ 470 RICO

### Social Security
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### Mass Torts
☐ 360 Other Personal Injury

### Products Liability
☐ 195 Contract Product Liability
☐ 245 Tort Product Liability
☐ 315 Airplane Product Liability
☐ 345 Marine Product Liability
☐ 355 Motor Vehicle Product Liability
☐ 365 Other Product Liability
☐ 385 Property Damage Product Liability

### Professional Malpractice
☐ 362 Personal Injury - Med. Malpractice

### Motor Vehicle Accidents/Slip and Fall
☐ 350 Motor Vehicles
☐ 360 Other Personal Injury

### Other Torts and Personal Injury incl. Asbestos cases
☐ 360 Other Personal Injury (Fed. Tort Claims Act)
☐ 310 Airplane
☐ 320 Assault, Libel and Slander
☐ 330 Federal Employers' Liability
☐ 360 Other Personal Injury
☐ 368 Asbestos Personal Injury

*CONTINUED ON*
*REVERSE SIDE*

**V. ORIGIN**  (Place an "X" In One Box Only)

☒1
Original
Proceeding

☐2
Removed from
State Court

☐3
Remanded from
Appellate Court

☐4
Reinstated or
Reopened

☐5
Transferred from
another district
(Specify)

☐6
Multidistrict
Litigation

☐7
Appeal to District Judge
From Magistrate Judgment

| **VI. CAUSE OF ACTION** | Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**): |
| | **28 USC 1332** |
| | Brief description of cause: |
| | **Declaratory Judgment and Injunction in foreclosure cases** |

**VII. REQUESTED IN
COMPLAINT**      ☐ Check if this is a Class Action
Under F.R.C.P. 23

DEMAND $                    JURY DEMAND: ☐ Yes ☒ No
(Check YES only if demanded in complaint)

**VIII. RELATED CASE(S)
IF ANY**      JUDGE _____      DOCKET NUMBER _____

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

05/15/2012
_____
Date

_~~~~~~~~ B Curu_
_____
Signature of Attorney of Record

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

IV.     NATURE OF SUIT: Place an X in the appropriate box. Make sure to select the Nature of Suit from the category which best describes the primary cause of action found in your complaint. You must select only one nature of suit.

VIII.    RELATED CASES, IF ANY: This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

---

| FOR OFFICE USE ONLY | | | | |
|---|---|---|---|---|
| Receipt # _____ | Amount _____ | Applying IFP _____ | Judge _____ | Mag. Judge _____ |

```
Court Name: U.S. District Court for RI
Division: 1
Receipt Number: 14670008083
Cashier ID: rjackson
Transaction Date: 05/15/2012
Payer Name: John B. Ennis
-----------------------------------------
CIVIL FILING FEE
  For: John B. Ennis
  Case/Party: D-RIX-1-12-CV-000366-001
  Amount:        $350.00
-----------------------------------------
CHECK
  Amt Tendered:  $350.00
-----------------------------------------
Total Due:       $350.00
Total Tendered:  $350.00
Change Amt:        $0.00

Civil Filing fee
for CA12-366-M
```